We'll hear argument next this morning in Case 11-1447, Koontz v. St. Johns River Water Management District. Mr. Beard. Thank you, Mr. Chief Justice, and may it please the Court. This case is about the extent to which Nolan and Dolan review should be made available to individuals to challenge excessive exactions imposed as conditions to land use approval. Here, before he could make small use of his property, Coy Koontz was told by the district that he had to finance enhancements to 50 acres of publicly offered land. Let's back up. When he asked for a permit, he voluntarily said, I, as mitigation for the loss of wetlands, I'm going to voluntarily create a conservation easement on the rest of my property. So he recognized from day one that there had to be some mitigation for what he was seeking to do in the permit. Is that right? That is correct. With his application, Justice Ginsburg, he did offer mitigation in the form of a conservation easement on most of his property. And if he had offered nothing, and he just said, I want this permit to develop my land, and the agency said, you've offered no mitigation, we deny your permit, would he have a claim? If there was no condition attached to the permit denial, then there would be no claim. Although it would be up to the district under Nolan and Dolan to make the individualized determination, both of the amount of impact to wetlands and the amount necessary to offset. Suppose he just put in the application, no mitigating, no mitigation of any kind, and the agency says no. You recognize that he would have no claim, right?  It depends, Your Honor. If the denial was based on the idea that he was obligated to offer mitigation, and that was the extent of the district's communication with him, in other words, that the district told him, you must offer us something, we won't tell you what, and we'll let you decide what you want to offer in mitigation, if that was in the record and that was the result of that was a permit denial because Mr. Coons said, for example, well, gee whiz, I don't know how much I need to mitigate for, you haven't told me. I still believe there would be a Dolan violation because in Dolan, the Court made clear, there has to be an individualized determination. For what? For what? You wouldn't know what property was taken. He wouldn't know what property was taken. You're posing a situation in which he never came forward with any suggestion. They never came forward with any suggestion. You say he still has a cause of action for a taking? A taking of what? Not for a taking, Your Honor, but he may have a cause of action under Nolan and Dolan for the imposition of an unconstitutional condition that may not be the contours of which may not be known. But the fact that this district told him, you need to mitigate. I think the other side says that you may have such a cause of action here. Excuse me, I didn't understand. Wouldn't the other side in this case acknowledge that you have such a cause, that you have such a cause here? Yes, Your Honor. I believe they argued that they're just saying you don't have a cause of action for a taking. That is correct. They're saying that we don't have a cause of action for a taking. Of course, in Nolan and Dolan, there was no transfer of property from the applicant to the relevant agencies. As this Court will recall, in both Nolan and Dolan, there was an imposition of an exaction, and immediately the applicant in both cases sued to prevent the unlawful exaction from being considered. Sotomayor, I've had a problem with your argument, okay? From the record, it's very clear that a conservation offer is not considered mitigation, because there's still a net loss of wetlands. The policy is abundantly clear, stated, and undisputed, okay? So, given that policy, why are we even in this case? Meaning, whether there was an exaction or no exaction or whatever happened in terms of the denial, you couldn't win on your offer, because the policy of the State was clear and, in my mind, unassailable. We have to preserve wetlands. Conservation of other wetlands is not enough. Mitigation means make sure that we get a net gain of wetlands. So why are we here? Waxman. Justice Sotomayor, we don't contest the legitimacy of the policy, of course, in preserving wetlands. Nor do we contest, for that matter, the ratios that the district has imposed via its regulations. It is undisputed, the trial court found below, the court of appeal affirmed, and the finding was undisturbed in the Florida Supreme Court, that in fact the off-site mitigation, that part of the mitigation that went beyond the conservation easement, was in excess. It violated Nolan and Dolan. So the underlying factual findings are not in dispute. Ginsburg. I think you have a problem there, Mr. Beard, because if you look at the record, the record is very clear that it was not that the district didn't come back and say, take it or leave it, you improve our wetlands or you get no permit. There was, and if you set out in the Respondent's brief at pages 13 to 15, oh, at least half a dozen, maybe more. The district said, here are several ways, several ways that you could sufficiently offset the adverse impact. And some of them had nothing to do with improving the government's own land. So we can't, we really can't say this was a take it or leave it. Either you do the improvement that we're asking you to do or you get no permit. What do you do with the fact that, as the appendix certainly bears out, that the district offered a range, it offered many, many ways that this permit might be granted, and then it says you're free to come up with some other, something else. Beard. Justice Ginsburg, it's true that there were negotiations and that a range of offers were made. On Mr. Kuntz's application to use 3.7 acres of his property in conjunction with the conservation easement, the district made a final decision denying him his permit because he would not go beyond the easement and offer off-site mitigation.  Ginsburg. Not because he wouldn't go beyond what he was offering, but that's some of these options. One was that he, that he adjust the size of his project, that he make it smaller. The staff suggested eliminating, no, that's a different one. But there was one that suggested that he reduce the scale. The Petitioner reduced the scale of his project to 1 acre and preserved the rest with the conservation easement. Now, if that, if we took that, would you have any case here? I'm sorry, Justice Ginsburg. If they said we'll give you a permit, if you reduce the scale of your project to 1 acre and then preserve the rest by a conservation easement? Unlikely not, Your Honor, because the trial court did conclude, based on the evidence, that he was having minimal impact on any viable wetlands. And so even a reduction in the size of the project with an increase in the amount of mitigation would have a fortiori gone beyond even what we have in this case. The court of appeal made clear as a matter of law that Mr. Kunst was entitled to a determination on the application he submitted. He submitted that application, and as the district admitted in a pretrial statement right before trial, the denials were based exclusively, and this is a quote, the denials were based exclusively on the fact that the plaintiff would not provide additional mitigation to offset impacts from the proposed project. Mr. Beer, could I go back to Justice Ginsburg's first question and make sure I understand your answer to it? Suppose that the State just had a policy that said we're concerned about wetlands. In order to develop your piece of property, you have to come forward with a proposal, a mitigation proposal, and an adequate mitigation proposal. And then it gives some guidance about what an adequate mitigation proposal would mean, but it really leaves it up to the landowner. And the landowner says, sorry, I'm not giving you anything. I think I should be able to develop this on my own without providing any mitigation. Is that and the State says, well, then, sorry, you don't get a permit. Is that a taking? Does the man have a takings claim? I heard you answer the question yes. My answer was that he may have a Nolan Dolan claim. I don't want to get confused about the term taking, because taking can imply many kinds of regulatory takings claims. Kagan. And that's the next question I was going to ask you, because my understanding of Nolan and Dolan was that it assumed the condition, if taken alone, would constitute a taking. Do you disagree with that? I do not disagree with that, Your Honor. Okay. So then you need a taking someplace in the picture, isn't that right? Nolan Dolan says this is how we analyze takings in the context of a permit scheme. So we have to look for a taking.  This was Justice Ginsburg's example. Where is the taking? And I think that's correct, that under Nolan and Dolan, you would have to have a condition that was imposed on you. My only point was, would it be lawful or would there be a problem in the district shifting its burden onto the applicant and saying, we're not going to establish what mitigation is required, or we're not going to establish what the impacts are. We'll leave that up to you. You give us what you think is necessary. Suppose the district did have, as I think it did here, a uniform policy that for every acre you develop, you have to preserve 10 wetlands, 10 acres of wetlands. And then two cases, both hypothetical. One is somebody has a 100-acre parcel and they want to develop 5 acres, then they have 50 acres that they mitigate for wetlands. The other person has only 1 acre and he wants to develop the whole acre. Can the district then say, we'll give you the 1-acre development permit if you reclaim wetlands on 10 other acres that you, that we can designate for you elsewhere? The hypothetical being designed to point out whether or not the crux of your argument is that he had to go off-site. The crux is not that he had to go off-site, but that did play into the trial court's analysis as to the connection between his impact and what was being required. And there was testimony below that there was no connection there. And the fact that the mitigation was 4 to 7 miles away played into the analysis as to whether there was a connection. Kennedy, so in my hypothetical, you would not, would there be a violation in my hypothetical as you understood it? It depends, Your Honor, because you'd have to determine what in each respective hypothetical what the impact was actually to the wetlands, and then determine  Sotomayor, do you normally decide whether the agency has done that right or not? How do you normally decide? Let's assume Justice Kagan's question or Justice Ginsburg's question. No, it just says, come to us with a mitigation plan. And you say, this is what I offer and it's enough. And they say, no, it's not enough, denied. Would you go through the State administrative process to figure out whether that was arbitrary and capricious, whether it was a pen-sexual violation? What would you do with that claim in the normal circumstance? Justice Kennedy's question. In the normal circumstance, if there was no condition imposed, there would not be a Nolan and Dolan claim. There may be another kind of claim, say, under pen-sexual, and that could be brought – it wouldn't have to be brought to the administrative remedies if there was a final agency action. Sotomayor, it would be an inverse condemnation. Correct. It could be an inverse condemnation type of a claim. Breyer, what I think might be driving some of these questions is the district court says, just as you say, had Kuntz offered additional mitigation, the additional, it would have cost $10,000, he would have gotten the permit. That's what he said. So then you look back to see what additional mitigation. And here we have in the record, at least that my law clerk finds, you know, that they went to Kuntz and they said, here are some choices. Install a subsurface stormwater management system in the development, I mean, right on your land, or reduce the size to one acre, or eliminate the filling of sideslope areas, or replace 15 culverts and eliminate a ditch system somewhere else, or eliminate a ditch system somewhere else, or enhance 50 acres somewhere else. Now, at that point, when they all, and then they said, won't you negotiate for 30 more days, maybe we can find some other things. He says, no, I'll bring a lawsuit. Okay. Now, I absolutely can see a Penn Central claim there. You see, but the land, is it, what you were talking about is not some land somewhere off the site. We're talking about his land. If, after all, they said you have to leave all the coal in the mine to hold up the ceiling, we know what I'm referring to, then they go too far. And here, if we looked at all these conditions proposed and said, you know, this is just terrible, they don't do it for anybody else, your client is the only one, it bears no relation to us, oh, it just goes too far, you win under Penn Central. So I can see the framework here. I'm not saying you're going to win, but I got it clear what the framework is. But suddenly, you bring this Nolan Dolan business into it, and I get confused. And the reason is because there was a different piece of land in Nolan and Dolan. The piece of land that was different was an easement in front of the — and an easement is a piece of property in Nolan. And there was a bike path in Dolan, right across his property. So I don't see how Nolan and Dolan have to do with this. I see everything that Penn Central has to do with it. And that goes out of the nature of what was being offered. You're saying what they're offering you is simply going too far. Okay, I got that conceptually. I ask this question because all these briefs are about Nolan and Dolan, and I don't understand what they have to do with it. I must be missing something, so that's what I'm asking. Justice Breyer, Nolan and Dolan fundamentally are about whether a property owner has been singled out to bear public burdens that, in fairness, in general, they have not. And the court said, well, you can't take his land, because they took a piece of land, which everybody assumes right in front of his house, and said you've got to let everybody from the beaches walk back and forth from one beach in the north to another one in the south, and they're going to walk over your land. And the court said you can't take his land unless you have a nexus to some public purpose that is related to his building the house. I got it. I just don't see what it has to do with this case. Because you can have an unconstitutional condition imposed on your right to do something in this case, make use of your property. Of course you can. In fact, they're too much coal. That's an unconstitutional condition. It goes too far, and there is a framework called Penn Central which deals with it. Penn Central is a special takings case that goes to the question of whether a regulation of the use of property that is sought to be developed has gone too far so as to affect the taking. Penn Central is not the case. Sotomayor How does that not address going too far? You just said it. If this is unrelated to the denial of your permit of all uses of your land, and you're saying, well, I still have a use, I just want more, why does that entitle you to your lost profits? When were you ever entitled to start with the claim that somehow you're entitled to a permit as a matter of law? We're entitled under the unconstitutional conditions doctrine to not have to bear a public burden that has no bearing on the impact that we're trying to use on our property. Scalia That's fine. That would enable you to challenge the denial of the permit, saying it's based upon an unconstitutional condition. But how does it enable you to say there's been a taking? What has been taken? What has been taken, in effect, is his funds that have to be put now to a public use, the enhancement of 50 acres of public wetlands. And there is nothing in the Takings Clause, nothing at all. Scalia It hasn't been taken. I mean, he turned it down. Gershengorn Nothing was taken in Nolan and Dolan, either. What was proposed there, though, was a threat of a taking. Scalia The permit was granted in Nolan and Dolan. And the condition attached to the permit, therefore, took effect, namely, that you had to dedicate this easement over your beach, whereas, as my colleague pointed out, anybody could walk back and forth, barefooted. Gershengorn Justice Scalia, in Nolan and Dolan, there was approval with conditions. There were no permits issued. And that's an important distinction to make. Most agencies, including this one, you approve a permit with conditions, which means we will give you your permits as soon as you comply, which is substantively the same as saying we won't give you your permits until you say yes to our conditions. Breyer Look, we have the same question. I just want an answer to my question. And for the purposes of this question, I am assuming enormously in your favor. I am assuming that this set of conditions is the worst thing since sliced bread. All right? I think they're too – all right. I'm assuming that in your favor. Scalia Sliced bread is supposed to be good. Breyer No, no. It's been proved bad. But in any case, the point is, you see, I assume that in your favor. I'm trying to figure out the conceptual framework. I assume that in your favor. I assume whether they didn't issue the permit and would have, but they haven't quite, or maybe they have, means nothing. Now, having assumed that, it seems to me what your argument is, is that this is a form of regulatory taking of the kind that Holmes was talking about. And that, that's what was going on in Penn Central. And so we simply look to see if it went too far, whatever. The lower courts could do that. I got that part. Now, I want you to answer the question, which is, am I right? Is there another part, a different part to this case, called the Nolan Dolan part? And explain that to me. That's why I asked the question. I want to hear what you're going to say. Justice Breyer, there is another part, a very distinct part, and that part goes to the question of the condition that produced the denial. So there are actually two parts here. There's the conditioning of your permit. In other words, we will not issue you permits unless you agree to perform off-site mitigation. Now, the question under Nolan and Dolan is, was that condition constitutional? Was he asked to give up something that the State or the district in this case should not have asked him to give up in exchange for his right to use his property? Now, it's true, as Justice Breyer, you mentioned, that the permit denial and whether that affects a regulatory taking of his land, of the thing he wants to use, that's an entirely different question, and it may raise another kind of claim, another kind of taking claim. But the crux of the claim that was litigated in this case from the trial court all the way up to the Florida Supreme Court is, was the condition to perform off-site mitigation, and that was accepted as true by the courts below, that this was a condition that had to be used. Ginsburg-Miller The record just doesn't bear that out. The record shows that it wasn't one option. They gave him a laundry list of things he could do, some of them having nothing, whatever, anything off his own property. Suppose whatever the district court might have said, the record shows that the agency said, here are seven things you could do, come up with something else if you have something else, and some of them had absolutely nothing to do with other property. Waxman We agree that there were negotiations and that even in the order it's alleged that various options were provided to Mr. Koontz. But ultimately the decision, as the district admits, the decision, the final decision to deny the permit application for 3.7 acres of use was Mr. Koontz's refusal to acquiesce in the condition that he perform 50 acres of off-site improvements. And by the way, the reference. Ginsburg-Miller Where is that? Waxman It's in the Joint Appendix, pages 70 to 71, which is the pretrial statement where each party sets forth his and her position. There the court or, I'm sorry, the district made clear that the condition that had been refused and was the cause of the permit denial was the one to perform off-site mitigation at a cost of a range between $10,000 on the low end, our experts said in the range of $100,000 to $150,000, $90,000 to $150,000. So the district later on, even in the Florida Supreme Court, Justice Ginsburg, said in its Petitioner's Brief on Jurisdiction at page 1 that it required additional mitigation before it would authorize the permits and that, quote, additional mitigation would be off-site because the available conservation land on site was, in the district's view, insufficient mitigation. So there's no question that an actual condition was imposed whose rejection produced a permit denial. Kagan Mr. Beard, I don't think anybody is contesting that there was a condition imposed, or maybe there are, but there's another question whether that condition is a taking. And we've been trying to figure out what's the taking here. Nolan Dolan, they took an easement, they took a piece of land, so that's the taking. Now, you said the funds are the taking. Is that correct? Any time that somebody comes up with a proposal for a developer to pay money in order to compensate the State for the costs that are associated with his development, that that is itself a taking? I want to be clear that we're not saying that all monetary fees or exactions would be subject to Nolan and Dolan. Only within the permit context, the special context of land use permitting. Kagan No, I understand. But in the permit context, a State can't say to somebody, you have to pay to perform some service or to compensate without it being a taking and without it being subject to Nolan Dolan analysis. Correct. If the State or if the government or the permitting authority asks for the property owner to give up property, even money, to be put to a public use, and it's not an application fee or a user fee or something like that, it's for mitigation, that should be subject to. So, for example, and I'll try to do this very quickly, if the State just had a policy for every acre of wetlands you fill in, it costs us $10,000, you need to pay $10,000, that's subject to Nolan Dolan analysis, too? Correct. It would be subject to Nolan and Dolan analysis to determine if they're really on the ground as a connection between the impact of the permit. Scalia It would be subject to Nolan Dolan analysis if they took the $10,000. If they issued the permit, the developer went ahead with the development, and the State then attached the bank account in the amount of $10,000 or whatever. That would be Nolan. In Nolan and Dolan, in Nolan there was a taking. He had gone ahead with the development of his house under the permit, which said if he did that, he gave away the easement. So there was a taking there. The easement would have been taken automatically. In Dolan, there was the individual had not gone ahead with the development, but it was clear that any development the person undertook would be subject to the exaction that the municipality required. So there was a taking there, we said. Here, there's nothing that happens. The permit was denied, unlike in Dolan, where the permit was granted. And it was understood that if she went ahead with it, she was going to lose some land rights. Here, the permit's been denied. I can't see where there's a taking here. Nothing's been taken. Neimann Nolan and Dolan, Your Honor, nothing was taken either. In Nolan, you had a permit approval with conditions. It's true that development had not gone forward. But here as well, development had not gone forward. Presumably, theoretically, if the development had gone forward, he might have been subject to conditions that he would have had to satisfy. But I would submit to the Court that the permit had issued. The permit had issued in both of those cases. And therefore, the person was saying to go ahead with this permit, I give up this land. The permits in Nolan and Dolan actually did not issue. There was only approval with conditions, and there's a difference. And that's no different from what happened here. The threat is the same. You don't get a permit issued to you until you approve it. Scalia, There was no approval with conditions. There's one thing for a municipality to issue, an approval with conditions. And a municipality saying, we can't approve it unless you agree to these conditions. And the person doesn't agree, and the municipality says, we don't approve it. Neimann Nolan But in either case, he faces the threat, the unconstitutional condition on his use of his property. You don't get your use until you comply with our conditions. Mr. Chief Justice, this is just one. Kennedy I have one question. I know you're running short on your rebuttal time. Assume that when we look at this record, assume we think there's a due process violation, not a taking violation. That is not before us here, is it? Neimann Nolan No. The due – there is no due process claim here. There's only a State statute that embodies sort of a due process standard, but there is no due process claim here. And may I reserve the balance of my time, Your Honor? Roberts And I'll afford you some additional time since our questioning intruded on yours. Neimann Nolan Thank you. Roberts Mr. Wilson. Wilson Mr. Chief Justice, and may it please the Court, the parties agree that Florida may require a landowner to perform mitigation as a condition for a permit that would allow the destruction of the wetlands. The parties disagreed as to how much mitigation was appropriate in this case. The district thought that Mr. Kuntz's proposal was insufficient to mitigate the damage to wetlands. Mr. Kuntz rejected the district's counterproposals, and he refused to do anything more. And the district denied his permit application because he refused to do anything more. Roberts Does it make any difference in his refusing to do anything more whether the condition is on-site or off-site? Wilson I don't think it makes any difference, Mr. Chief Justice. I mean, the under the Florida regulatory regime, we cannot demand certain conditions from the landowner. We are obligated, if the permit, the landowner has to establish under his permit application, and it's his burden, that he meets the various standards, the public interest standard, which includes no adverse impact.  Wilson Correct. Roberts What about, is there anything in the Federal constitution that limits the conditions that you can demand? Wilson I don't, not, not, if I understand your question, Mr. Chief Justice, I don't think so. I think that the question is, when you are talking about what analytical rubric you should apply, whether it be Nolan or Dolan or Penn Central, I think you can always argue that the impact of any of the conditions that we would demand, and I will assume here that they are true demands, you can always argue that the impact of the conditions, be they on-site, off-site, or monetary, would be so burdensome that it would call into play Penn Central or Dolan. Roberts But there's no, there's no restraint on the agency can ask for the moon before it will, before it will give a permit. Wilson Well, I don't, I mean, I think that Penn, first of all, I think there are many restraints on the agency.  Roberts Do you know of any case where the government's lost a Penn Central case? Wilson Yes, there are several in this case, Mr. Chief Justice. I mean, Hodel v. Irving is a Penn Central case, I believe, and I think Kaiser Aetna was also a Penn Central. Now they, now they present, so, so it does, it certainly does, and, and there are different. Roberts It doesn't happen very often. Wilson Well, it is, it's certainly the burden is on the landowner, but, but I think  that, you know, some, some coherence to the, to the takings jurisprudence and repudiated the Agins point. The Court pointed out that, that the, what, that the normal, sort of the normal jurisprudence is that the government is not required to establish by a heightened scrutiny sort of that there's a connection between means and analysis when it engages in economic, economic regulation. Roberts Just, just to nail it down, your, your position is that there is no limit in the Federal Constitution on what the agency can demand as a condition for the issuance of a permit. Wilson No, no, no. I don't think that's our position. First of all, the Due Process Clause may certainly impose conditions. The Equal Protection Clause may certainly impose conditions. And. Roberts But, but the takings, the takings clause does not. Wilson If the, if the conditions are so onerous that it would make it essentially impossible to derive any value from the land, that may very well call into question Penn Central or Lucas. I mean, in many ways, this case could have been litigated as a very straightforward Penn Central case. Kennedy Suppose, suppose the agency said, we're really short of revenue. We'll let you develop your land if you contribute a million dollars to our new football stadium. Wilson Justice Kennedy, I think that that might very well raise a Penn Central or a Lucas claim. It also sounds like. Scalia It doesn't raise Penn Central. You keep on running away from it by saying Penn Central or Lucas. It doesn't deprive the land of all value, but it still has some value. Penn Central is totally out of the case. Wilson I mean, it's not a Nolan or Dolan claim, is my point, Justice Kennedy. And it's not a Nolan or Dolan claim because it's not a, the, as my friend acknowledged, the question in Nolan and Dolan is, or the rationale of Nolan and Dolan is, would the condition by itself, if demanded unilaterally and outside the permitting context, would that have been a taking of property for which just compensation would have been required? Roberts Well, sure it would have been. Sure it would have been. If they just went along to a landowner and the landowner is there minding his own business and they say, well, you own some property, so give us a million dollars to build a football stadium. That would be, that would be unconstitutional, right? I think that would, I mean, I think that would violate, could well violate the Due Process Clause. It's hard to see what the, you know, what the rationality of it is. But I don't think that this Court has ever extend, has ever extended the concept of a taking to requirements that a landowner, that a, that anybody, or a landowner either pay money or, more importantly, because I think what really is this case, is come into compliance with a regulatory requirement that would have the, which he would have to expend money to comply with. Alitoso I'm trying to understand what would be, what would be left of Nolan and Dolan if we agree with you. Let me give you three situations. First, petition, the district says we're granting your permit on the condition that you give us one-third of your land. That's Nolan and Dolan, right? Roberts Yes. Alitoso Okay. Situation number two, permit is denied, but it will be granted if you give us one-third of your land. What about that? Roberts I think in that situation, in other words, if the situation is really exactly the same like Nolan and Dolan, but the permit is denied, but it's clear that it's a concrete, concrete condition, the landowner can go up through the judicial review process and say this is an, you know, the denial of the permit application is predicated on an unconstitutional condition and you should set that aside. Alitoso Is that the same as the first example for purposes of Nolan and Dolan? Roberts Almost. Almost, Justice Alito. Alitoso All right. Now let me get to my third. The permit is denied, but it will be granted if you give us the fair market value of the third of the land. And once you've done that, then we're going to condemn your land and pay you the fair market value for it. Roberts Justice Alito, I think that this Court's decision, there are, this Court has a decision in Village of Norwood, essentially says if what is going on is just a pure contrivance to avoid the requirement of compensation in the Just Compensation Clause, that the Court has said no, it will look through to the substance of the demand and determine that there was, you know, essentially an evasion of the Just Compensation Requirement. Scalia As I understand your position, cash is magical, right? The government can come in and come into my house, take all of the cash that's there, and that is not the basis for a takings claim, right? Because cash is not a taking. Does that make any sense? Roberts Well, first of all, Justice Scalia, of course, this case we don't believe involves cash. It involves a requirement to do something that costs money, which is different from cash. I mean, cash is the problem with extending, the problem with extending the takings concept to a monetary obligation which can be paid for out of sort of undifferentiated funds is that it has no logical stopping point. I mean, the Court's point is don't take my cash. Scalia Your answer to my question is that's okay, it's not a taking, right? I may have some other cause of action, but not a taking? The government's come in and taken my money. Roberts It's not a Nolan and Dolan claim for the government to say, if you want a perfect case. Scalia I'm not talking Nolan and Dolan, I'm talking about your position that the taking of cash cannot be a taking. Roberts Well, if the government — I'm sorry, Justice Scalia, if the government is seizing the identifiable dollar bills that are in your house, I mean, that sounds  Scalia Oh, I see. Scalia But if they say you have to turn over to us whatever money you have in your house or you have to turn over to us whatever is in your bank account, that's not a taking. Roberts Justice Scalia, I think there are many constitutional claims that could be made. And I also want to add, there's an extensive overlay of State law in this area that protects landowners from arbitrary, irrational, intrusive, excessive demands by government  Roberts But one of the things — the Federal provision, the Takings Clause, is designed to prevent property owners from having to bear the costs that should be borne by the people as a whole, the football stadium example. There's no reason that a particular landowner should have to pay for the football stadium simply because he owns property. The Takings Clause is designed to make sure that those exactions aren't imposed on property owners, but spread more evenly across the citizens who benefit from it. And I guess I don't understand why you say that the Takings Clause is the one provision that doesn't apply in that type of situation. Mr. Chief Justice, the Armstrong policy of the — that an individual person should not be forced to bear what society should — what should be spread to society as a whole is not violated when the government insists that a landowner comply with a generally applicable regulation. Now, of course, the generally applicable regulation in the football stadium hypothetical is not generally applicable. It says you are the owner of this property, and if you want to develop it, you've got to build a football stadium. Well, I think that is saying to one particular landowner, you may have to build a football stadium where no other type of similar regulation or requirement would ever be imposed on any other landowner, sounds, you know, like an — you know, sounds like an equal protection claim if the government just picks out one landowner. But why is it okay if they do it to five or six other landowners? Well, but then I think you have to ask what — but then, Justice Scalia, I think you have to ask what — what regulatory scheme is the government imposing in order to do that? Well, let's — let's put it — let's put it this way. I take it it's — it's a given that the government cannot take an easement on your property. It cannot use your property for its own purposes. It cannot park its trucks there. It cannot cut the grass. Why is it that if it can't do those, it can still force you, as a condition to using your property to its highest and best use, to pay them money? Well, I think — Why isn't that an equal burden? Why isn't that an equal use of the property by the government? I think it — I think for several reasons, Justice Kennedy. First of all, I think that the — this nation has a long legal tradition of giving unique legal protection to property as opposed to money. I mean, there are many circumstances, many circumstances where the government can say to an individual, you must give me $1,000, but cannot say to — or a group of individuals, but cannot say to the same group or individual, you must give me land worth $1,000. I mean, there — I mean, that's — that is what the Just Compensation Clause says. Really? I — gee, that doesn't strike me as entirely true.  I think that would — the latter is bad and the former is okay. I think that would raise very serious questions at least. I mean, I don't know that this Court has ever — has ever been faced with exactly such a case, but I think that would raise very serious questions.  Breyer. Breyer. No, but am I wrong about — I might have this. I thought the framework roughly is the following. It is not the case that Penn Central applies only where there is a physical invasion of property or there is total destruction of the value of the property.  It's not case-specific inquiry. But there are another set of cases where Penn Central and McMahon apply with case-specific inquiry. And those, to discover whether you have one, you look into such things as whether the regulation destroys investment-backed expectations, and then you look to the nature of the government interest and the relationships, et cetera. That's what I thought the framework was. Now, if that's the framework, then when the government says, I will let you develop your land if and only if you give $50,000 to the Shriners Hospital, you would say, I can't develop my land. And besides, that significantly interferes with my investment-backed expectation. And besides, there is no relation whatsoever. Therefore, I win under the Takings Clause. Now, I spell all that out because if I'm wrong about that framework — if I'm right about the framework, that can apply to this case. If I'm wrong about the framework, I want to know where in the cases I'm wrong. Justice Breyer, we think that you are right about that framework. That and just 6 weeks ago in the Arkansas Fish and Game Commission case, this Court reiterated that Penn Central is presumed to be the taxpayer. So if I'm right about the framework, that takes care of all the hypotheticals you were asked. In those cases, there is a significant interference with investment-backed expectation, and there is no justification whatsoever, so the Takings Clause applies. I — we agree, Justice Scalia, and we don't think that's the case. Justification is the protection of wetlands. Well, maybe. That's a justification, the protection of wetlands. There is no necessary comparison, as Nolan and Dolan requires, between the harm that would be occasioned if the permit were granted and what the State is exacting in order to mitigate. That doesn't exist anywhere in the analysis that you're talking about. Well, Justice Scalia, there are — there is another problem with the Nolan and Dolan claim in this case, which is it's hard to see how you can have an exactions-takings claim when nothing has ever actually been exacted from it. Now, that is a problem. Now, and that — and so — and in this case, the — if the claim for the taking is — for the compensation is based on Nolan and Dolan, it seems that there is a mismatch, and that what the Petitioner is trying to do is sort of take the Nolan-Dolan heightened scrutiny government-bears-the-burden-of-proof analysis and sort of convert that into what is the regulatory takings analysis for the entire parcel of his land, which is — which is the measure of damages that he received. So I think that there is a mismatch. I know this is— Roberts I think that your point goes to the question that's been raised about there was no permit issued. He has — didn't accept the permit. And I don't understand that proposition. Are you saying that if you are confronted with an unconstitutional condition, you have to accept it, and then you can challenge it? You can't simply say you denied that on the basis of an unconstitutional condition, and that's wrong. No, that's not our argument, Mr. Chief Justice. Florida has opened an avenue for judicial relief for you to go up through the Florida APA process, just like the Federal APA, where you can say, stop — stop the district from doing this to me. They are predicating their — either their grant or not. Roberts Okay. I'm trying to get to the Federal — you often fall back to the State provisions. I'm looking at the Federal constitution, and assuming the State provisions give you no relief, is it your position that he has no claim unless he accepts a permit with unconstitutional conditions? If there's no — if there's no kind of avenue, as I was saying, then I think we — then you have to obtain — you have to seek compensation, but your compensation is for the value of your land that was taken. And in Lingle, this Court reiterated that the Takings Clause is not a substantive limitation on the government's power to regulate. The Takings Clause, or as I should call it, the Just Compensation Clause, is a requirement that if — that the government will pay you just compensation for any property or property interest it has seized from you. It does not — it does not itself impose a requirement that the government substantively justify its regulation. Ginsburg Mr. Goulston, why isn't it entirely reasonable to say, if you're going to put a condition on a permit, that condition has to have some rough proportionate relationship to the harm that is being done to the permit? But that seems to be perfectly sensible, that if they're going to exact a condition, the condition has to have some roughly proportional relationship to the harm. Justice Ginsburg, I think that the district thought that they were acting roughly proportional. In other words, we're not saying that the government shouldn't act — that government should not act reasonably. But I think that when you force these cases into court under the Noland-Dolan framework, you have a — you have basically kind of a mismatch, an extraordinarily complex situation, and you have — you run right into what this Court said in Lingle, which is that it is not ordinarily the Court's — the appropriate approach to require the government to bear the burden of proof of the property. Kennedy Well, in Pencoe v. Mann, the government didn't enter the property. It didn't take the property in the physical sense of moving it in an appropriate way. It just says, congratulations, you have some coal under your land, and we hope you enjoy it because you can't move it. And we said that is a taking. That is a regulation that goes too far. And it deprived, as Justice Breyer indicated, the owner of investment expectations, although that word wasn't in Penn-Mann. Waxman Correct. And, Justice Kennedy, nobody is disputing that Mr. Koontz could have made the argument that the regulation goes too far in the sense of the burden on his proposed project. I mean, he had all of those arguments available to him. He bought the — he says he bought the land before the regulation went into effect. He had investment expectations and all the rest of it. But that is not the claim that he is advancing to this Court. Thank you. Thank you, Mr. Wilson. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. I'd like to emphasize at the outset that Petitioner's argument that Nolan and Dolan should apply in this context would constitute a radical change in the way standard, generally applicable regulatory programs are operated. It is standard procedure when someone applies for a permit from the government, it is the permit applicant's burden to establish that he complies with the regulatory program. Nolan and Dolan shift that burden to the government. That has never been the case under regulation, including land use regulation. Scalia. What was taken in Nolan and Dolan? In Nolan, was it the easement that was taken? That is what — if the permit had issued and an easement was granted, yes, it was the easement. Well, but it wasn't what was taken unreasonably, the ability of this homeowner to make the alterations to his house that he wanted to make. He wanted to add another story. And the State said, you can't do it. And its only basis for saying you can't do it was because you wouldn't give us the easement. The basis of the theory of Nolan and Dolan, and the Court made this clear in Lingle and in Del Monte Dunes, for that matter, is those two cases apply in the specific situation where there is an exaction of a right of access, an easement for the public to enter the land as a condition. And the reason for that, the Court explained in Lingle, were really two reinforcing points. The first was that there would be public access, which is a permanent physical occupation, which is one of the exceptions to the General Penn Central test for regulatory takings. The other is that it was a per se taking. It was per se that the government could not have acquired that easement for paying — without paying compensation. Therefore, the government could not attach as a condition to the granting of a permit that the person convey something unless it was proportional. So the theory began with the idea that the easement itself would have been a — the taking of that would have been a per se taking. This is a very different situation, because the other way in which Petitioner's theory would constitute a radical departure is that compliance with regulatory programs frequently, maybe almost always, requires the expenditure of money. If someone wants to build a power plant, a coal-fired power plant, he's going to have to install a scrubber to protect the air, to prevent no diminution of air quality. Constructing that costs money. It can't be that the requirement to spend money to comply with a regulatory program is itself a taking. The taking would be a per se taking. Roberts, what about the football stadium? Do they — can you pick a particular landowner? I mean, you took a case in which there's no question under Nolan and Dolan about the relationship, proportionality, and nexus. Let's put those to one side, because the issue is whether Nolan and Dolan apply. Can the government say, okay, you want a permit, we'll give you the permit if you fund the new football stadium? I think in that situation there would be a very substantial equal protection challenge, because one landowner is being singled out with no additional business. But the one constitutional provision that is concerned with protecting property owners from having to bear burdens that should be borne by the public at large is not applicable. Well, that — it applies when there is identifiable property taken. No, why isn't the answer, yes, it is applicable? Of course it's applicable. I own a piece of land, and they have significantly interfered with my investment-backed expectation. And to say that I can't put a house on this because I'm supposed to pay for a football field, which has nothing to do with it, is as close to insisting that you have to have 4,000 columns of coal in your mine so that you can never use it as I can think of. It's homes brought up to date. I mean, at least that argument would be made, and why wouldn't it be a winning argument? Certainly a Penn Central argument could be made there, but I think that's very different from the Nolan argument, which imposes the burden on the government and basically treats the payment of money as itself. Sotomayor Mr. Kneedler, can I go back to the questions presented a moment? The court below did two separate rulings, I think. One is there can't be a taking if the claim is that it's of an undifferentiated money, not a risk. And I think you would agree with that. If the only issue is an obligation to pay money, that that's not a takings claim,  Kneedler Yes. And this is not even an obligation to pay money. It's an obligation to spend money to come to the mine. Sotomayor Right. There was a second holding, however, which really gets elipsed by the second, which is a denial of a permit doesn't permit you to raise the Nolan-Dolan case. And it appears to me even if there is an easement situation, even if there is an actual takings claim at issue, do you agree with that first holding by the court below? Assuming we narrow it not to undifferentiated money, but is there a difference between a denial or a grant? Kneedler No. If the agency decision is written where there is an express condition, we don't think that it matters. An express condition satisfying Nolan and Dolan, in other words, an exaction of per se taking, we don't think it matters whether the — whether it's a permit grant or permit denial. There was no actual taking in the sense the compensation would be owed, but it could be challenged as an unconstitutional condition under the Nolan and Dolan analysis. But we think it's critical when thinking about that, that the permit denial — that only applies if the permit denial expressly is based on the condition, because otherwise you would get into a situation of negotiations and what was discussed and liability could turn on an exchange of ideas, whereas it should turn on the formality of the agency's final decision. It's akin to the Williamson County final decision requirement. Roberts I agree your friend on the other side cited a number of places in the record where he thought your condition was satisfied, that the denial of the permit was expressly based on the failure to comply with the offered conditions. Kneedler Well, if you look at the orders denying the permit applications in the record, I believe it's 49 to 51 and 69 to 61. In those situations, it says the permits were denied because the plaintiff did not give the reasonable assurances that the statute requires in order to get the permit, the reasonable assurances of no loss of wetlands functions. One of the ways that could be used. Scalia Isn't this unreal? I mean, you're saying all along in the negotiations the agency says if you do X, you get the permit, and X is what would be an unconstitutional condition. Okay? He refuses to do X. The permit is denied with a general statement like this. The permit is denied because he has refused to do the necessary mitigation. Isn't it clear that the reason he's refused to do the necessary mitigation is he has refused the last demand of the agency? Kneedler The ultimate standard under the statute is whether he has provided reasonable assurances. What assurances? The way in which he goes about it, whether off-site or on-site. If the off-site part just arises because this is a wetlands case, normal regulation wouldn't raise the off-site, on-site problem. But the ultimate question is he didn't carry his burden of establishing no net loss of wetlands. Breyer Well, the way he's going to say, in part, because I guess, I did a little numbers from your brief. The 37 million acres in Florida, say about 4 million are bodies of water, and say a third of them are built up, and we have 11 million that are wetland and 11 million that aren't. That's crude. So they're saying, why in heaven's name are we supposed to be – everybody wants to build, and why should the people that happen to live on wetland have to pay for all the other wetland? That's just coincidence. So he's going to say that that is like the Shriner's Hospital. You're going to say, no, it isn't like the Shriner's Hospital. Now, all I'm saying is, isn't it at least an issue under the takings clause, whether it is or isn't? Kneedler I think it's clearly not like the Shriner's Hospital. Breyer I know you'll say that, and they'll say it is. But I did want to come back to Justice Scalia's question. The permit denials, just general permit denials, the Court made clear in Del Monte Dunes are not covered by Nolan and Dolan. They are covered by Penn Central. So – and the Court made clear in Nolan that the Court could have denied the permit without attaching the condition. We think it's important that the agency always have that option. And the third point is, this is the case of the Shriner's Hospital, and the Shriner's Hospital is a district, you know. If they say the right words, then they're out from under it. Isn't that right? Kneedler Well, I don't think so, because there are situations in which an agency actually wants to get the easement. But this Court in Lingle made clear that the general rule is Penn Central, with only the two exceptions for regulatory reasons. Alito Why should it matter whether the permitting authority says expressly in the denial it's denied because you didn't do this, or it just says it's denied, but it's perfectly well understood what was needed, what they were going to demand in order to get it? Kneedler Because the agency has to reserve, has to have the ability to deny the permit because the conditions required by the statute were not met. And Nolan and Dolan deal with formality and the formality of conveyance of an easement if there's not a document that requires that, then the strict requirements for the narrow exception of Nolan and Dolan do not apply. Roberts Thank you, Mr. Kneedler. Mr. Baird, you have three minutes. Baird Thank you, Mr. Chief Justice. I would just like to point the Court, and particularly Justice Scalia, to pages 30 and 31 of our brief on the merits, where we describe with citations to the Nolan and Dolan what precisely happened there. I want to make sure that it's clear that what they did there was not issue permits. They approved with conditions, but the property owner still had to satisfy the conditions in order to receive the permit. As to the question about what do we do with what Mr. Kneedler says, is a ruling in your favor on this question, that all denials are subject to Nolan and Dolan. What do we do with that? I mean, what's the ---- I see an enormous floodgate here, and one in which we are sending a signal that perhaps States should be more quiet rather than more engaging. They should just say no, because anything they offer is going to be seen as an unconstitutional ---- potentially as an unconstitutional taking. They should just plain say no, not explain why, not engage in any work with you to mitigate. Justice Sotomayor, I don't believe that negotiations will suddenly break down and we'll see a flurry of permit denials if the Court rules in our favor. What will happen instead, it's true, I should say, they will lose flexibility in demanding whatever it is that they want. Under the Takings Clause, they won't have any review. But the benefit of applying our rule that says monetary exactions should be treated like other exactions and be reviewed under Nolan and Dolan. Sotomayor, but they're not. People are asked to pay taxes. Homeowners are asked to pay taxes all the time. Development fees, if they want to develop something. People are subject to money exactions all of the time in this society. No question that we all are subject on a daily basis to government demands that we pay, that we have a financial obligation. Sotomayor, so what happens in just when the legislature passes a development fee? Are you now saying that's subject to Nolan and Dolan, too? If the legislation requires an agency who processes the permit to impose a fee in exchange for a permit within, again, within the land use context, we're not talking taxes, homeowners' fees. We're talking within the discretionary land use process that is imposed there. Then the risk of coercion, undue influence and the like arise, and Nolan and Dolan should apply. But I wanted to respond specifically to Justice Breyer's questions about Penn Central. I think conceptually there's an important difference between the unconstitutional conditions doctrine, which is what we seek to apply here, and what would be a permit or what would be a Penn Central claim. The unconstitutional conditions doctrine, the offense there is the improper conditioning of a permit. It's not did the condition force me to lose the value in my land. That's a very different question that a case like Penn Central might answer, subsequent to a permit denial. The unconstitutional conditions doctrine focuses exclusively on the permit execution and on the conditioning, not on subsequent decisions by the government, for example, to deny. Roberts. Thank you, counsel. Thank you. The case is submitted.